IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JESSE MESTAS,

          Plaintiff,

vs.                                 Civ. No. 02-888 ACT

JO ANNE B. BARNHART,
Commissioner of Social Security,

          Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Agency Procedure filed June 16, 2003. Docket No.16. The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is not well taken and will be denied.

## I. PROCEDURAL RECORD

Plaintiff, Jesse Mestas, filed his application for benefits on May 6, 1998, alleging a disability since November 15, 1996, due to a back injury, high blood pressure, arthritis, headaches, and numbness and loss of feeling in his arms and hands. Tr. 138-40, 213. Plaintiff insured status for Title II disability insurance benefits expired on September 30, 1997. Tr. 16, 147. The Administrative Law Judge ("ALJ") found that Plaintiff was not disabled on April 22, 1999. On July 20, 2001, the Appeals Council remanded the case for a new hearing with vocational expert testimony. Tr. 136-37.

A different ALJ conducted a new hearing on December 11, 2001 with vocational expert

testimony.  Tr. 56-99.  At the hearing, the Plaintiff was not represented by an attorney.  On February 21, 2002, the ALJ made the following conclusions according to the sequential analysis set forth in 20 C.F.R.§ 404.1520(a)-(f) and *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993): Plaintiff met the insured status requirements for entitlement to a period of disability and disability insurance benefits at the time of his alleged onset and continued to meet them through September 30, 1997; although the Plaintiff does not appear to have engaged in post-onset substantial gainful activity, he has continued to work since his alleged disability onset as a self-employed diesel mechanic; the claimant impairments of degenerative arthritis of  the spine, bilateral carpal tunnel syndrome, and hypertension are "severe;" the claimant's impairments do not meet or equal a listed impairment; Plaintiff's testimony and other evidence do not credibly establish functional limitations to the extent alleged; the claimant has a residual functional capacity for a limited range of light-level work;  the Plaintiff cannot perform his past relevant work; based on testimony of a vocational expert, Plaintiff could have performed other jobs in the economy after his alleged disability onset and prior to the expiration of his insured status; and Plaintiff is not disabled and not entitled to disability benefits under Title II of the Social Security Act.    Tr. 16-23.

The ALJ entered his decision on February 21, 2002.  Thereafter, the Plaintiff filed a request for review.  On June 7, 2002, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ.  Tr. 9.  The Plaintiff subsequently filed his Complaint for court review of the ALJ's decision on July 25, 2002.

## II.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards.  *See*

*Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.,* 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)).  A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a clamant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson*, 987 F.2d at 1486.  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520(a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson,* 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show (1) he is not engaged in substantial gainful employment; (2) he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; (3)  his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1; or (4) he is unable to perform work he had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. Id.

### III.  MEDICAL HISTORY

There are relatively few medical records for the period prior to September 30, 1997.  The ALJ noted that the earliest record[1] is a report from Dr. Quito Carr who examined the Plaintiff in November of 1992 in connection with a job application to work as a heavy equipment operator or construction truck driver.  At that time x-rays showed "severe degenerative joint and disc disease at all levels, suggesting a picture of ankylosing spondylitis."  Tr. 18.  Dr. Carr recommended that Plaintiff limited himself to no more than light, or at most medium work requirements.  *Id.*

The next record is in March of 1996 when Plaintiff saw Dr. Roland Sanchez for a physical examination and laboratory tests in connection with an application for a commercial driver's license.  Dr. Sanchez reported a normal physical examination and laboratory results.  Tr. 262-63.  There was evidence of some physical deconditioning, but  no evidence of ischemia or heart disease.  Dr. Sanchez diagnosed Plaintiff with chronic osteoarthritic back pain and recommended swim therapy.  He re-certified the Plaintiff as qualified for a commercial license.  Tr. 263.

The next record is on June 19, 1997 when the Plaintiff saw Dr. Anthony Martinez for a physical.  Tr. 325.  He complained of a hematuria(blood in the urine) and low back pain.  Dr. Martinez ordered an X-ray which showed severe disc space narrowing and osteophyte formation but no evidence of fracture or subluxation.  X-rays also showed severe arthritic change in the left hip. Tr. 323.

Plaintiff returned to Dr. Martinez in December of 1997, three months after his date last insured.  Tr. 314.  He continued to complain of low back pain as well as some right leg pain, chest

---

[1]These records were noted by the ALJ.  However, these pages, 255-60, are missing from the administrative record before the Court.  The Court finds that this is not a reason to remand as the record concerns Plaintiff's medical condition four (4) years prior to Plaintiff's alleged onset date.

discomfort and epigastric distress.  An X-ray taken at that time showed diffuse degenerative spurs with disc space narrowing causing some spinal stenosis.  Tr. 321.  An MRI examination showed disc herniation at the L2-3 level, mild stenosis at the L3-4 and L4-5 levels and mild bulges at several other levels.  Tr. 319. Dr. Martinez referred the Plaintiff to Dr. Thomas Cohn for further evalution of his back and leg pain.  Tr. 314.

The Plaintiff saw Dr. Cohn on December 22, 1997.  Tr. 282-289.   Plaintiff reported to Dr. Cohn that his back pain was worsening and that he was trying to continue working as a self-employed mechanic, but he avoided lifting and bending because of the pain. On physical examination, Dr. Cohn found that Plaintiff cervical muscles were tight and tender; that Plaintiff had deceased lumbar flexion at 75 degrees; and a tight and tender left lumbar paraspinal muscle complex.  Straight leg raising was positive to the left in the L5 nerve root region.   The remainder of the musculoskeletal and neurological findings were normal.  Plaintiff had a full range of motion and strength in all other joints and extremities including his hands, wrists, elbows, shoulders, cervical spine, hips, knees and ankles. Sensation and reflexes were intact and he walked with a normal balance and gait.  Dr. Cohn noted that Plaintiff's back pain was radicular, usually non-severe and partially responsive to medication. He recommended further studies prior to recommending any treatment.

Plaintiff again saw Dr. Cohn on January 28, 1998. Tr. 276-280.  Plaintiff reported that his pain on average was four on a ten-point scale.    He said he was not having significant pain the day of the visit.  Dr. Cohn performed electromyographic and nerve conduction studies which showed some non-severe polyphasic[2] activity in the L5 and S1 musculature.  The remainder of the results were normal.

_____

[2]Polyradiculitis is the inflammation of the nerve roots. *Dorland's Pocket Medical Dictionary*, 23ed. (1982).

On physical examination, Dr. Cohn found that the Plaintiff had good strength, sensation and reflexes in the lower extremities, and straight leg raises were negative. Dr. Cohn diagnosed the Plaintiff with mild polyradiculitis. Plaintiff was not having severe back or leg pain or any radiating pain. He recommended that Plaintiff continue taking Motrin. Plaintiff was to return on an as-needed basis.

Again, in April of 1998, Plaintiff told Dr. Cohn he still had pain rated at a four on a ten point scale. His examination findings remained the same. Again, Dr. Cohn advised him to increase his Motrin and said he was not a surgical candidate. Tr. 174-75.

Plaintiff continued treatment with Dr. Martinez for his back pain and other unrelated problems. Tr. 302-313. In June of 1998 x-rays showed degenerative changes with some foraminal and disc space narrowing. Dr. Martinez diagnosed cervical radiculopathy and probable carpal tunnel syndrome. He prescribed Motrin for pain. Dr. Martinez referred the Plaintiff for physical therapy in September of 1998. A discharge note of October 13, 1998 reported that Plaintiff made substantial gains after six sessions. Tr. 334. Plaintiff said he felt better and his symptoms had decreased.

## IV. DISCUSSION

Plaintiff asserts that the ALJ erred in: (1) discounting Plaintiff's credibility, (2) in not fully developing the record, and (3) relying on the testimony of the vocational expert's testimony.

Plaintiff's credibility was properly discounted.

In evaluating a Plaintiff's complaint of pain, the ALJ must consider three factors: (1) whether there is objective medical evidence of a pain-producing impairment; (2) whether there is a loose nexus between this objective evidence and the pain; and (3) whether, in light of all the evidence, both objective and subjective, the pain is disabling. *Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995)(citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). At step three, the ALJ must make

6

an express credibility determination if the ALJ does not believe the Plaintiff's testimony regarding his pain.  *Schroeter v. Sullivan*, 977 F.2d 391, 394-5 (7th Cir. 1992).  A credibility finding must be "closely and affirmatively linked to substantial evidence not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391, quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1998).

In this matter, the ALJ considered many factors in making his credibility finding and noted the relevant evidence in the record.  The ALJ properly considered Plaintiff's daily activities.   *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988).  The ALJ noted that Plaintiff continued to work despite his allegations of total disability.  Tr. 16.  Plaintiff disclosed that he continued to work three hours a day and operate a business.  Tr. 16, 151-212, 228, 282.  Although his work was part-time and not substantial gainful activity, it is inconsistent with Plaintiff's subjective complaints and supports the ALJ's conclusion that Plaintiff was not credible.  *Dunahoo v. Apfel,* 241 F.3d 1033, 1038-39 (8th Cir. 2001).  Moreover, plaintiff reported building trucks as a hobby, that he drove quite a bit, and swam for exercise.  Tr. 79, 84 and 298.  He also reported that he shopped, occasionally changed the oil in his car and did some yard work.  Tr 83-84.

The ALJ also properly determined that the medical evidence does not support Plaintiff's claim of total disability.  Tr. 17.  As discussed above, his treating physicians did not find him disabled.  Dr. Cohn found essentially full ranges of motion in Plaintiff's back without pain.  Dr. Cohn also found that Plaintiff's pain was usually not severe, that his symptomalogy was rather mild and that he was not a surgical candidate.  Moreover, Plaintiff reported that after his insured status expired, his pain has worsened.  Tr. 282.  This was confirmed when in his administrative hearing on December 11, 2001, Plaintiff reported he had pain in 1997, "but not like I'm having now."  Tr. 77.  The ALJ also noted that Plaintiff said that in September of 1998 he could lift up to 25 pounds, which is consistent

7

with light work.  Tr. 21, 235; 20 C.F.R. §404.1567(b)(light work involves lighting no more than 20 pounds at a time).  Furthermore, the ALJ properly considered that Plaintiff took Motrin for pain and that Motrin helped his pain and that his physicians recommended only conservative treatment.  Tr. 19, 277 and 282.

The Court finds that the ALJ considered the relevant evidence in assessing Plaintiff's credibility and finds no reason to disturb the ALJ's finding.  *Hamilton,* 961 F.2d at 1499 (Credibility determinations are the province of the ALJ).

The record is fully developed.

Plaintiff asserts that the ALJ relied on ambiguous medical evidence and should have ordered a consultative examination.  A consultative examination is generally required when there is a conflict in the medical evidence requiring a resolution, when the medical record is inconclusive or when additional tests are necessary to explain a diagnosis.  *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997).  In this matter, though scant, the medical records provide a sufficient basis for the ALJ's decision.   There was no conflict in the records and there were sufficient tests and physical examinations supporting the diagnosis.   Further, based on the medical evidence discussed, a consultative examination in 2002 would not assist the ALJ in determining whether Plaintiff was disabled in 1997.

Vocational expert testimony based on the ALJ's hypothetical is substantial evidence.

The hypothetical question posed by the ALJ asked the vocational expert to assume an individual with Plaintiff's age, education, and work experience who was capable of light work that did not require a lot of sitting, but permitted an occasional opportunity to sit and alternate between sitting and standing. Tr. 94. The vocational expert testified that such a person could perform the jobs

of auto parts salesperson, with 4,086,000 jobs in the national economy and 3,000 jobs in New Mexico; parking lot attendant, with 63,000 jobs in the national economy and 300 jobs in New Mexico; shipping and receiving weigher, with 260,000 jobs in the national economy and 525 jobs in New Mexico; and rental clerk, with 341,000 jobs in the national economy and 1,600 jobs in New Mexico. Tr. 94-95.

Plaintiff contends that the ALJ found Plaintiff could not perform fine fingering and handling, or more than occasional stopping, climbing, kneeling or crawling required in these positions. The ALJ specifically considered in his decision that the state agency physicians recommended these limitations, but the ALJ id not find that the medical evidence supported these limitations. Tr. 21. The ALJ is correct in that Plaintiff's treating physicians did not note these limitations. As discussed above, Dr. Cohn specifically found to the contrary. State agency physicians are non-examining physicians who review the medical evidence at the early stages of the application process and the ALJ is not bound by these findings. *Richardson v. Bowen*, 807 F.2d 444, 448 (5th Cir. 1987);20 C.F.R. §§404.1503(d)(1); 404.1527(f)(2)(i).

Plaintiff's remaining arguments are also without merit. The ALJ, contrary to Plaintiff's assertion, included in his hypothetical questions Plaintiff's need to alternate between sitting and standing. Tr. 94. Plaintiff refers to Social Security Ruling (SSR) 83-14. The correct ruling is SSR 83-12. This ruling requires the ALJ to consult a vocational expert when the Plaintiff must be able to sit and stand at will. In this case, the ALJ did consult a vocational expert. Finally, Plaintiff contends that his skills as a diesel mechanic could not transfer to a rental clerk position. This is an unskilled position which does not require any transferable skills. Tr. 95-96.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a

Rehearing is denied and Plaintiff's Complaint is dismissed with prejudice.

**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**